# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FORCINE CONCRETE & CONSTRUCTION CO., INC., Plaintiff, v. MANNING EQUIPMENT SALES & SERVICE, et al., Defendants. | CIVIL ACTION No. 08-2926 |

Pollak, J.                                                                                              March 16, 2010

## OPINION

In this action, commenced in the Philadelphia Court of Common Pleas and subsequently removed to this court, plaintiff Forcine Concrete and Construction Co, Inc. ("Forcine") has sued five parties (collectively, "defendants") for alleged wrongs Forcine suffered when attempting to sell a "laser screed" ("the machine"). Compl. ¶ 10.[1] The defendants are Manning Equipment Sales & Service ("MES&S"); John Manning, the president of MES&S; James Winters and Patty Clemens, both employees of MES&S[2]; Somero Enterprises, Inc. ("Somero"); and Myron Hillock, a Somero employee. Forcine

---

[1]     While the complaint does not specify the function of a laser screed, it appears likely to be a device used in commercial concrete projects. *See* Compl. ¶¶ 1-3.

[2]     The complaint identifies these employees as "James Doe" and "Patty Doe," Compl. ¶¶ 6-7, but plaintiff, MES&S, and the individual MES&S defendants identify the employees as Winters and Clemens in the memoranda before this court.

claims that all of the defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1 *et seq.* ("UTPCPL") and committed common-law fraud and civil conspiracy. Forcine further alleges that MES&S breached an oral contract with Forcine and unlawfully converted the machine. Removal of the suit from the Court of Common Pleas to this court was on the ground of diversity. *See* 28 U.S.C. § 1332.[3]

On May 26, 2009, this court issued an order (docket no. 35) placing Forcine's action in civil suspense because of pending bankruptcy proceedings. The case is now before the court on Forcine's Motion for Relief from Automatic Stay (docket no. 36), which seeks leave to proceed against all defendants except MES&S, the bankruptcy debtor. Manning, Winters, and Clemens have filed an opposition to plaintiff's motion (docket no. 37); Somero and Hillock have not filed any response.

Forcine argues that it is entitled to proceed with its action against Manning, Winters, Clemens, Somero, and Hillock, because – as is uncontested – MES&S is the only defendant that has filed for bankruptcy. The automatic stay triggered by bankruptcy proceedings is mandated by 11 U.S.C. § 362(a), which states in relevant part that a bankruptcy petition "operates as a stay, applicable to all entities, of," *inter alia*, "the

---

[3] It is not yet entirely clear that complete diversity exists, because the notice of removal – filed by Somero and Hillock – only alleges that Manning, Clemens, and Winters are Michigan citizens upon information and belief. Docket No. 1, ¶¶ 8-9. As jurisdiction is not contested, I will, for the purposes of the motion addressed in this opinion, assume that complete diversity exists.

commencement or continuation . . . of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a) & (a)(1).  Forcine is correct that, while the automatic stay is very broad, as a general matter it "stays actions only against a debtor." *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997) (internal quotation marks omitted).  Indeed, "'[i]t is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, or others with a similar legal or factual nexus to the . . . debtor.'" *Id.* at 509-510 (quoting *Maritime Elec Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991)) (internal quotation marks omitted).  The stay also generally "does not bar an action against the principal of a debtor-corporation." *Maritime Elec Co.*, 959 F.2d at 1205.

Under certain "'unusual circumstances,'" however, "courts have extended the automatic stay to non-bankrupt codefendants." *McCartney*, 106 F.3d at 510 (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).  In *McCartney*, the Third Circuit noted that other decisions had recognized two main categories of "unusual circumstances."  The first, which concerns circumstances "where stay protection is essential to the debtor's efforts of reorganization," 106 F.3d at 510, is inapplicable here, because MES&S is in liquidation proceedings pursuant to Chapter 7 of the Bankruptcy Code.  *See* Defs.' Mem. at 2.

The crux of the parties' dispute on this motion concerns the second exception,

which allows proceedings against third parties to be stayed "where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *McCartney*, 106 F.3d at 510 (quoting *A.H. Robins*, 788 F.2d at 999). Such cases frequently involve situations in which the debtor would be forced to indemnify its co-defendants in the event of an adverse verdict. *See McCartney*, 106 F.3d at 510 (citing *In re Am. Film Techs., Inc.*, 175 B.R. 847, 855 (Bankr. D. Del. 1994) and *In re Family Health Servs., Inc.*, 105 B.R. 937, 942-43 (Bankr. C.D. Cal. 1989)).

Neither this exception nor any other discernable "unusual circumstances" apply to plaintiff's claims against Somero and Hillock. From the information before this court, it appears that Somero is a corporation with no legal relationship to MES&S and that Hillock, an employee of Somero, also lacks any such relationship. Any judgment against these defendants – who have not objected to plaintiff's motion – therefore could not be interpreted as a judgment against MES&S, and Forcine's motion will accordingly be granted as to Somero and Hillock.

Plaintiff's motion will also be granted as to Manning, Winters, and Clemens. Those defendants argue that they are entitled to the protection of the automatic stay because "the alleged actions taken by Manning, Clemens, and Winters were all taken in their roles and capacities of employees of the Debtor." Defs.' Mem. at 3. Defendants

aver that, as a result, "these three individuals would have indemnification claims back against [MES&S]." *Id.*

Defendants Manning, Clemens and Winters are correct in asserting that the acts attributed to them were (if they took place) performed within the scope of their employment with MES&S. "Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another, it is not unexpected by the employer." *Natt v. Labar*, 543 A.2d 223, 225 (Pa. Commw. Ct. 1988) (citing *Fitzgerald v. McCutcheon*, 410 A.2d 1270 (Pa. Super. Ct. 1979)); *accord Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000).[4]

Forcine's complaint alleges that Manning, Winters, and Clemens engaged in fraud and civil conspiracy to commit fraud.[5]  Specifically, the complaint alleges that Forcine

---

[4]     The parties' memoranda on this motion have not addressed the question of which state's laws governs their dispute.  As noted below, Michigan law controls the question of when and whether MES&S would owe indemnity to Manning, Winters, and Clemens.  Even assuming that relevant state laws differ on questions besides indemnification, however, those differences would not control the disposition of this motion.  Accordingly, I generally assume – solely for the purposes of this opinion – that Pennsylvania law governs the dispute between the parties.

[5]     The complaint also alleges that these defendants violated the UTPCPL. Because Forcine has filed a proposed stipulation (albeit one unsigned by counsel for any other party) dismissing the UPTCPL claim against MES&S, Manning, Winters, and Clemens with prejudice, however, this court declines to consider whether or not individual MES&S employees could be independently liable to Forcine under the UPTCPL.  *See* Docket No. 13, Ex. A.

spoke to Winters on several occasions, and that on these occasions Winters variously (1) asked questions about the machine, (2) offered to sell the machine for a five per cent commission, (3) stated that he had secured a purchaser and would sell the machine for between $70,000 and $75,000, (4) said that MES&S had received a deposit and that it was "sold as 'part of a package deal,'" (5) stated that MES&S was "'waiting for the machine to be funded,'" (6) promised to discuss the situation with Manning, and (7) told Forcine that it would have to speak to Manning. Compl. ¶¶ 17, 19-21, 28, 31, 35, 37-38. Forcine also spoke to Clemens and Manning once each. During the conversation with Clemens, Forcine offered to fly Manning and Winters to Philadelphia to meet with Forcine representatives personally; Clemens declined but said that Manning would be in Philadelphia at a later date and would meet with Forcine representatives at that time. *Id.* ¶¶ 55-56. Manning, meanwhile, told Forcine that the machine had been sold but that MES&S had not yet been paid, and that he would both "send a check to Forcine" and "call back Forcine with the full sale information." *Id.* ¶¶ 48-49. Thus, the factual allegations concerning Manning, Winters, and Clemens reveal that *all* of the challenged actions taken by those defendants were taken in their capacity as employees or officers of MES&S. Moreover, the complaint implies that all of these actions were in furtherance of a scheme to allow MES&S to rent out the machine for its own profit. *See id.* ¶¶ 109-10. The alleged actions of Manning, Winters, and Clemens were therefore taken with the purpose of benefiting MES&S. *See generally Am. Film Techs., Inc. v. Taritero*, 175 B.R.

847, 854-55 (Bankr. D. Del. 1994) (reaching similar conclusions).  As a result, it appears exceedingly likely that Manning, Winters, and Clemens were acting within the scope of their duties with MES&S during their conversations with Forcine.

Defendants are also correct that "[a] master is liable for the acts of his servant which are committed during the course of and within the scope of the servant's employment."  *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1271 (Pa. Super. Ct. 1979).  In particular, "a principal is liable to third parties for the frauds, deceits, concealments, [and] misrepresentations, . . . of his agent, even though the principal did not authorize, justify, participate in or know of such conduct or even if he forbade the acts or disapproved of them, as long as they occurred within the agent's scope of employment."  *Travelers Cas. & Sur. Co. v. Castegnaro*, 772 A.2d 456, 460 (Pa. 2001).[6]  Thus, if liability is ultimately adjudged as against Manning, Winters, and Clemens, liability against MES&S may well be easily proved.

It does not follow from MES&S's potential vicarious liability to Forcine, however, that MES&S would be automatically forced to indemnify Manning, Winters, and Clemens.  Defendants do not argue that they are entitled to any contractual

---

[6]	There is a competing line of Pennsylvania cases that exonerates principals from liability where there is no "proof of authorization or participation by the principal."  *Eisenberg v. Gagnon*, 766 F.2d 770, 783 (3d Cir. 1985) (citing cases).  Because Forcine is entitled to proceed with its suit against Manning, Winters, and Clemens, regardless of the applicable rule, this court "need not attempt a complete reconciliation of Pennsylvania authority."  *Id.*

indemnification. Nor do they cite to any authority for the proposition that either statutory or common law would force MES&S to indemnify Manning, Winters, and Clemens for any liability incurred as a result of Forcine's suit. Pursuant to Pennsylvania statute, this court must look to the law of the state where MES&S is incorporated for all questions relating to MES&S's "internal affairs." 15 Pa. Cons. Stat. § 4145(a). MES&S is a Michigan corporation, and, pursuant to Michigan law, "[a] corporation has the power to indemnify . . . a director, officer, employee, or agent of the corporation . . . if the person acted in good faith and in a manner he or she reasonably believed to be in or not opposed to the best interests of the corporation or its shareholders." Mich. Comp. Laws § 450.1561. In actions brought by third parties, however, Michigan law only *requires* indemnity "if a director or officer of a corporation has been successful on the merits or otherwise in defense of an action, suit, or proceeding." *Id.* § 450.1563.

In other words, while Manning, Clemens, and Winters would be entitled to claim the costs of defense from MES&S if they successfully ward off Forcine's claims, they would *not* be automatically entitled to indemnity if they were adjudged liable to Forcine. There would, in other words, be no "immediate adverse economic consequence for the debtor's estate" following the imposition of liability on Manning, Clemens, and/or Winters. *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003). This fact is crucial, because the stay is applied to third parties only where the debtor's "indemnification obligations" are "absolute." *Stanford v. Foamex L.P.*, No. 07-4225,

2009 WL 1033607, at *2 n.9 (E.D. Pa. Apr. 15, 2009); *accord Hess Corp. v. Performance Texaco, Inc.*, No. 08-1426, 2008 WL 4960203, at *2 (M.D. Pa. Nov. 19, 2008); *In re Mid-Atl. Holding Sys., LLC*, 304 B.R. 111, 128 (Bankr. D.N.J. 2003). Because there is no indication that such obligations would be "absolute" in this case, the prospect of indemnification does not provide the "unusual circumstances" required by *McCartney* to extend the automatic stay to the non-debtor parties.

Nor does the possibility that a finding of liability against Manning, Winters, and/or Clemens might facilitate a later suit against MES&S suffice to constitute such "unusual circumstances," even assuming *arguendo* that MES&S would be collaterally estopped from relitigating any issues decided in prior proceedings concerning the individual defendants. As the Second Circuit held in *Queenie*, if the possibility of "later use against the debtor . . . of an adverse decision" "could support application of the stay, there would be vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants." 321 F.3d at 288. Moreover, while several courts have considered potential collateral estoppel effects as a factor supporting extension of the automatic stay to non-debtor parties, the *Queenie* court "located [no] decision[s] applying the stay to a non-debtor" solely on collateral estoppel grounds, *id.*, and this court has discovered no post-*Queenie* cases in this district extending a stay on such grounds.[7]

---

[7]        I note that several courts in this district have applied the four-factor test used to examine whether a party is indispensable for the purposes of Fed. R. Civ. P. 19 in the context of determining which parties are covered by Section 362(a)'s automatic stay.

Accordingly, because I can find no "unusual circumstances" under which a judgment against Manning, Winters, and Clemens would immediately and adversely impact the finances of MES&S, plaintiff's motion will be granted. An appropriate order accompanies this opinion.

---

*See, e.g.*, *In re Loewen Group, Inc. Sec. Litig.*, No. 98-cv-6740, 2001 WL 530544 (E.D. Pa. May 16, 2001). Manning, Winters, and Clemens have not, however, urged that MES&S is an indispensable party to the litigation, and I conclude that examination of whether *McCartney*'s "unusual circumstances" exist is the appropriate way to determine the breadth of the Section 362(a) stay.