# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FORCINE CONCRETE & CONSTRUCTION CO., INC., | Civil Action |
| Plaintiff, | No. 08-2926 |
| v. | |
| MANNING EQUIPMENT SALES & SERVICES, et al., | |
| Defendants. | |

Pollak, J.                                                                                          June 14, 2010

## OPINION

This action arises out of an attempt by plaintiff Forcine Concrete & Construction

Co. ("Forcine"), a Pennsylvania corporation, to sell one of its laser screeds (the

"Machine"). Forcine has filed suit against (1) Manning Equipment Sales & Services

("MES&S"), a Michigan corporation, (2) John Manning, the president of MES&S and a

resident of Michigan, (3) MES&S employees Patty Clemons and James Winters,[1] both

_____

[1] Clemons and Winters are referred to in the briefs as "Patty Doe" and "James
Doe," respectively. Both parties filings have, however, subsequently identified the
relevant employees as Clemons and Winters.

Michigan residents, (4) Somero Enterprises, Inc. ("Somero"), a Delaware corporation

previously headquartered in New Hampshire and currently headquartered in Florida, and

(5) Somero employee Myron Hillock, a Michigan resident. Plaintiff contends in Counts I

and II that defendants violated the Pennsylvania Unfair Trade Practices and Consumer

Protection Law ("UTPCPL"). Count III of Forcine's complaint claims that each of the

defendants committed fraud against each of the defendants, while Counts IV and V allege

that MES&S breached an oral contract and committed conversion, and Count VI seeks to

allege civil conspiracy against Manning, Winters, Clemons, and Hillock. Defendants

filed motions to dismiss the complaint for failure to state a claim on which relief may be

granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This case was

subsequently stayed after MES&S entered bankruptcy proceedings, but this court granted

plaintiff's motion to lift the stay as to all parties except MES&S on March 16, 2010. The

motions to dismiss are therefore ripe for determination as to all parties but MES&S.[2]

## A. Background

---

[2]    In the context of a motion to withdraw as counsel, which was granted by
United States Magistrate Judge M. Faith Angell on May 25, 2010, counsel for MES&S
and its former employees argued that John Manning has also filed for Chapter 7
bankruptcy, and that the case against him must therefore also be stayed. This conclusion
is incorrect. Counsel conceded that "Manning received his discharge" from the
bankruptcy proceedings in March 2010, Mot. to Withdraw ¶ 5, and once an individual
receives a discharge in Chapter 7 bankruptcy proceedings, the automatic stay of litigation
imposed by 11 U.S.C. § 362(a) is dissolved. *See* 11 U.S.C. § 362(c)(2)(C); *accord, e.g.*,
*United States v. Falcone*, No. 09-cv-2269, 2010 WL 1372435, at *1 (D.N.J. Mar. 31,
2010). This court has therefore been presented with no valid basis for staying the case
against Manning.

The allegations as set out in the complaint are as follows: In May of 2007, Forcine purchased two new laser screeds from Somero. Shortly thereafter, Forcine called Somero to express interest in selling the Machine and spoke with Myron Hillock. Hillock, working in concert with MES&S, offered Forcine an "artificially low" sale price – $45,000 – for the Machine, and recommended that Forcine contact MES&S for a quick sale at a better price. Compl. ¶¶ 13-14. Forcine then spoke with James Winters at MES&S, who asked about the condition of the Machine. Forcine recommended that Winters call "Matt," a different Somero representative, who informed Winters that the Machine "was in excellent shape." *Id.* ¶¶ 17-18. After this conversation, Winters "agreed to sell the Machine" on Forcine's behalf "in exchange for a five[ ]percent . . . commission." *Id.* ¶ 19. In June 2007, Winters told Forcine that MES&S had a purchaser for the Machine and that Forcine would receive between $70,000 and $75,000 for the sale. Forcine "agreed to allow MES&S to sell the Machine," and in June 2007, MES&S picked up the Machine. *Id.* ¶¶ 23, 25.

Over the following months, Forcine spoke several times to Winters, who said each time that the Machine had been sold but continually gave Forcine different reasons as to why Forcine could not be paid forthwith. Initially, sometime in June 2007, Winters told Forcine that MES&S "had received a deposit on the Machine, but could not immediately pay Forcine," because the Machine "was sold as 'part of a package deal.'" *Id.* ¶¶ 28, 31. Winters said he would ask John Manning to confirm the sale price. Four weeks later,

Winters stated that the Machine "was sold to a foreign company," but that "MES&S was 'waiting for the Machine to be funded.'" *Id.* ¶ 35. Winters said he would talk to John Manning and call Forcine back with the sale price. Several days later, Forcine called Winters again and was told "'John Manning will have to talk to you, it's his deal.'" *Id.* ¶ 38.

Forcine then expressed frustration to Hillock, who replied that he would call John Manning regarding Forcine's concerns. Manning called Forcine in December of 2007 and stated that "the Machine had been sold" but that "MES&S hadn't been paid yet." *Id.* ¶ 48. Manning promised to send a check and "call Forcine back with the full sale information." *Id.* ¶ 49. Forcine did receive a check for $45,000, but MES&S cancelled the check "before Forcine could cash it." *Id.* ¶ 52. Forcine then called MES&S and offered to fly Manning and Winters to Philadelphia to discuss the sale. Patty Clemons informed Forcine that Manning would be in the area after Christmas 2007 and would meet with Forcine then, but Manning never arranged a meeting.

"On January 14, 2008, MES&S told Forcine the Machine had sold" for $60,000. *Id.* ¶ 59. Forcine asked to have the Machine returned, but "MES&S told Forcine that the Machine was in South America and could not be returned." *Id.* ¶¶ 60-61. Forcine has not received any payment from MES&S.

### B. Legal Standard

In order to survive a motion to dismiss for failure to state a claim, a complaint

4

needs to include only "'a short and plain statement of the claim showing that the pleader

is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and

the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint "requires more

than labels and conclusions" or a "formulaic recitation of the elements of a cause of

action," "detailed factual allegations" are unnecessary.  *Twombly*, 550 U.S. at 555.

Rather, plaintiffs must simply plead "enough facts to state a claim to relief that is

plausible on its face." *Id*. at 570.  In reviewing a 12(b)(6) motion, "the facts alleged [in

the complaint] must be taken as true and a complaint may not be dismissed merely

because it appears unlikely that the plaintiff can prove those facts or will ultimately

prevail on the merits." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

"[R]easonable inferences" are also drawn in favor of the plaintiff. *Id*.

      Allegations of fraud are governed by the heightened pleading standard of Federal

Rule of Civil Procedure 9(b).

> In order to satisfy Rule 9(b), plaintiffs must plead with particularity the
> circumstances of the alleged fraud in order to place the defendants on notice of the
> precise misconduct with which they are charged, and to safeguard defendants
> against spurious charges of immoral and fraudulent behavior.  Plaintiffs may satisfy
> the requirement by pleading the date, place or time of the fraud, or through
> alternative means of injecting precision and some measure of substantiation into
> their allegations of fraud.  Plaintiffs also must allege who made a misrepresentation
> to whom and the general content of the misrepresentation.

*Lum v. Bank of Am*., 361 F.3d 217, 223-24 (3d Cir. 2004) (internal citations and quotation

marks omitted). A claim satisfies the requirements of Rule 9(b) if (1) it adequately

delineates the acts and transactions constituting fraud to apprise defendants fairly of the

claim, and (2) its allegations are sufficiently clear to enable defendants to answer. *Jairett*

*v. Montauk First. Sec. Corp.*, 203 F.R.D. 181, 186 (E.D. Pa. 2001).

## C. Fraud

Forcine alleges that each of the defendants committed fraud. To establish fraud

under Pennsylvania law,[3] a plaintiff must demonstrate the existence of six elements: "(1)

a representation; (2) which is material to the transaction at hand; (3) made falsely, with

knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent

of misleading another into relying on it; (5) justifiable reliance on the misrepresentation;

and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst*, 647

A.2d 882, 889 (Pa. 1994).

## 1. Patty Clemons

According to the complaint, Patty Clemons is an employee of MES&S who had

---

[3] Normally, this Pennsylvania federal court would apply Pennsylvania's choice of law rules to determine which state's law applies to the plaintiff's fraud claim. *Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007). In this case, however, all parties have exclusively relied on Pennsylvania law in briefing the motions to dismiss. Any objections to the application of Pennsylvania law have therefore been waived. *See, e.g., Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1005, n.1 (3d Cir. 1980); *Guinan v. A.I. DuPont Hosp. For Children*, 597 F. Supp. 2d 485, 494 (E.D. Pa. 2009); *Factory Mkt., Inc. v. Schuller Int'l, Inc*, 987 F. Supp. 387, 392 (E.D. Pa. 1997); *Higgins v. Ky. Cent. Life Ins. Co.*, No. 89-cv-1279, 1989 WL 107081, at *2 n.1 (E.D. Pa. Sept. 12, 1989).

one conversation with a Forcine representative. During that conversation, Forcine

"offered to fly John Manning and James [Winters] to Philadelphia" so Forcine could meet

with them, and Clemons responded on behalf of MES&S that the offer was unnecessary

as John Manning "would be in Philadelphia . . . after Christmas 2007" and would meet

with Forcine at that time. Compl. ¶¶ 55-56. Forcine claims that MES&S never arranged

a meeting, never intended to meet, and simply wanted to cause delay.

These allegations do not state a claim of fraud against Clemons. At a minimum,

Forcine has failed to plead – or present any reason to believe – that Clemons knew that

her statements were false. Accordingly, the motion to dismiss the fraud claim as to Patty

Clemons will be granted.[4]

### 2. John Manning and James Winters

Although Winters and Manning have, in conjunction with MES&S, filed a motion

seeking to dismiss the fraud claims against them, that motion never addresses the

allegations made in the complaint that specifically relate to Winters and Manning. This

court therefore will not address the sufficiency of these allegations. The motion does

appear to argue that Pennsylvania's gist-of-the-action doctrine bars plaintiff's fraud claim

against Manning and Winters. That doctrine, which bars tort claims that sound in

contract, does not, however, apply to parties "not in contractual privity with the plaintiff."

---

[4]     Because it is conceivable that plaintiff may be able to allege additional facts
properly pleading a fraud claim against Clemons, the dismissal will be without prejudice.

*The Knit With v. Knitting Fever, Inc.*, Nos. 08-4221, 08-4775, 2009 WL 3427054 at *17

(E.D. Pa. October 20, 2009) (citing further cases). Accordingly, the motion to dismiss the

fraud count will be denied insofar as it is pled against Winters and Manning.

3. Myron Hillock and Somero Enterprises, Inc.

The complaint alleges three representations made by Hillock to Forcine: that (1)

Somero would purchase the Machine for $45,000, (2) MES&S "was a reputable

corporation which would be able to quickly broker a sale of the Machine," and (3)

Hillock would call Manning "regarding Forcine's concerns" about MES&S's handling of

the Machine. Compl. ¶¶ 12, 14, 46. However, the complaint does not allege either that

(1) Hillock failed to call Manning, or (2) Hillock's statement that Somero would purchase

the Machine for $45,000 was false, even though Forcine believes that "Hillock knew

[Somero's offer] was significantly [less] than Forcine should receive." *Id*. ¶ 12.

Forcine's claim of fraud against Somero and Hillock must accordingly stand or fall on the

alleged "intentional [] misrepresent[ation]" that "MES&S could be trusted to sell the

[m]achine promptly and for a fair price." *Id*. ¶¶ 93 & 93(a). Somero and Hillock argue

that (1) Hillock's statement was one of opinion and therefore cannot be fraudulent, and

(2) the allegations surrounding this statement are legal conclusions not entitled to a

presumption of truth.

Whether Hillock's statement can be properly characterized as an "opinion" in a

doctrinal sense is open to serious question. However, assuming *arguendo* that Hillock's

8

statement was an "opinion," it appears that, under Pennsylvania law, a statement of

opinion may, within certain transactional contexts, constitute fraud. *See Newman v. Corn*

*Exch. Nat'l Bank & Trust*, 51 A.2d 759, 765 (Pa. 1947) ("Pennsylvania law, however,

recognizes that 'a misrepresentation of fact, *opinion*, intention or law for the purpose of

inducing another to act or refrain from acting in reliance thereon in a business

transaction' constitutes actionable fraud.") (emphasis supplied); *accord, e.g.*, *Jairett v.*

*First Montauk Sec. Corp.*, 203 F.R.D. 181, 185 (E.D. Pa. 2001) (quoting *Newman*); *see*

*also, e.g.*, Restatement (Second) of Torts § 539(a) ("A statement of opinion as to facts not

disclosed and not otherwise known to the recipient may, if it is reasonable to do so, be

interpreted by him as an implied statement[,] (a) that the facts known to the maker are not

incompatible with his opinion; or (b) that he knows the facts sufficient to justify him in

forming it."). Defendants Hillock and Somero have not cited – and this court has not

found – any Pennsylvania Supreme Court case postdating *Newman* that holds to the

contrary. Accordingly, since the opinions of that court are controlling on this issue of

state law, Hillock and Somero and not entitled to dismissal of the fraud claim even

assuming that Hillock's statement was one of opinion.

Forcine's allegations concerning Hillock's statement about MES&S are also

sufficient to state a claim under Rule 9(b). Forcine has appropriately pled (1) the specific

statement that Hillock made on behalf of Somero, (2) the approximate date of the alleged

misconduct, and (3) the identity of the alleged wrongdoer. In fact, each of the elements

of a common-law fraud claim is either expressly pled in, or may be directly and reasonably inferred from, the complaint. While Somero and Hillock argue that Hillock's "prediction [concerning MES&S] turned out to be true," Defs.' Mem. at 8, the gravamen of the complaint is that MES&S did not, in fact, "sell the Machine promptly and for a fair price," Compl. ¶ 93. Plaintiff's fraud claims against Somero and Hillock is therefore based on the falsity of Somero's statement, and plaintiff alleges that, as a participant in the fraud, Somero made the false statement knowingly. Moreover, the complaint alleges that Hillock "provided Forcine with an artificially low number to coerce Forcine to sell the Machine through MES&S." *Id*. ¶ 13. The complaint therefore pleads an intent by Hillock and Somero to induce Forcine to rely on Hillock's alleged misrepresentation about MES&S. The complaint also includes sufficient allegations of damages. Finally, it may be directly inferred from the complaint that (1) Forcine did not know of the falsity of Hillock's allegations, (2) the allegations were material to Forcine's decision to sell the Machine via MES&S, and (3) had Forcine not believed Somero's alleged misrepresentation, it would not have sold the Machine via MES&S. Accordingly, taking the allegations in the complaint as true, Forcine has properly pled its claim of fraud against Hillock and Somero, and their motion to dismiss the fraud claim will be denied.

### D. Conspiracy

"To prove a civil conspiracy under Pennsylvania law, a plaintiff must show the following elements: (1) a combination of two or more persons acting with a common

purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful

purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal

damage." *SNA Inc. v. Array*, 51 F. Supp. 2d 554, 561 (E.D. Pa. 1999) (quoting *Strickland*

*v. Univ. of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)). "Proof of malice or an

intent to injure is [also] essential to the proof of a conspiracy," *Strickland*, 700 A.2d at

988, as are allegations of "an underlying tort," *Tomino v. City of Bethlehem*, No. 08-cv-

6018, 2010 WL 1348536, at *17 (E.D. Pa. Mar. 31, 2010) (citing *McGreevy v. Stroup*,

413 F.3d 359, 371 (3d Cir. 2005)); *accord Plegatti v. Cohen*, 536 A.2d. 1337, 1341-42

(Pa. Super. Ct. 1987).

A plaintiff alleging conspiracy is not required to comply with Rule 9(b)'s pleading

standard. While the plaintiff's allegations of the underlying fraud must comply with Rule

9(b), the elements of conspiracy generally need only satisfy the notice pleading standard

of Rule 8(a). *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989); *U.S. ex rel Bartlett v.*

*Tyrone Hosp., Inc.,* 234 F.R.D. 113, 123 (W.D. Pa. 2006); *Jairett*, 203 F.R.D. at 187.[5]

Therefore, to survive a motion to dismiss the conspiracy claim, the plaintiff's complaint

need only "describe the general composition of the conspiracy, some or all of its broad

objectives, and defendant's role in that conspiracy." *Id.* at 187-88.

---

[5]     *Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004) is not to the contrary.
*Lum* merely holds that when fraud underlies another claim, "the allegations of fraud must
comply with [Rule] 9(b)." *Id*. at 223; *see also id.* at 229 (dismissing a conspiracy claim
because the underlying allegations of fraud were not pled with particularity).

Defendants correctly assert that "there can be no cause of action for civil conspiracy to commit [an] act" "absent a civil cause of action for that particular act." *Plegatti*, 536 A.2d at 1341-42. As Forcine has failed to appropriately plead fraud against Patty Clemons, there can be no cause of action for civil conspiracy against Clemons. The conspiracy charges against Patty Clemons will accordingly be dismissed.[6]

Because the fraud claims against Manning, Winters, and Hillock will not be dismissed, however, the conspiracy claims pled against those defendants are not subject to dismissal for lack of a predicate fraud claim.[7] Moreover, the complaint properly alleges the other elements of a conspiracy claim. In particular, Forcine alleges that the individual defendants "entered into an illicit scheme in which they agreed to rent the Machine to third parties for their own benefit without informing or receiving permission from Forcine." Compl. ¶ 109. Forcine also alleges several overt acts taken in furtherance of defendants' scheme – including that (1) Hillock induced Forcine to sell the Machine to MES&S, (2) Winters (a) stated that there was a purchaser for the Machine in June 2007, (b) later told Forcine that MES&S had been paid a deposit on the Machine but that it could not pay Forcine at that time, and (c) still later informed Forcine that it was waiting

---

[6] As with the fraud claim against Clemons, the dismissal will be without prejudice.

[7] Manning and Winters argue for the dismissal of the conspiracy claim against them on this basis, but they once again fail to address the particular allegations of fraud relating to them.

for payment on the Machine, and (3) Manning likewise represented that the Machine had been sold but that MES&S had not yet been paid. These allegations are sufficient to state a claim for civil conspiracy against Manning, Winters, and Hillock.

### E.  Pennsylvania Unfair Trade Practices and Consumer Protection Law

Forcine has filed a stipulation to dismiss Count I, which pleads a violation of the UTPCPL against MES&S, Manning, Winters, and Clemons. Although that stipulation is unsigned by counsel for any other party, this court will accept it and dismiss Count I with prejudice. Further, although plaintiff's UTPCPL claim against Somero and Hillock is pled separately as Count II, Forcine argues that the motion to dismiss the UTPCPL count against Somero and Hillock is moot because plaintiff filed "a stipulation to dismiss Count I of the Complaint" with prejudice. Pl.'s Mem. at 3. I construe plaintiff's argument as a statement that Forcine has no objection to the dismissal of Count II. Accordingly, Count II will also be dismissed with prejudice.[8]

### F.  Conclusion

For the foregoing reasons, (1) Counts I and II of the complaint will be dismissed with prejudice; (2) the motions to dismiss filed by (a) defendants John Manning and James Winters, and (b) defendants Somero Enterprises, Inc. and Myron Hillock will

---

[8]     Count II would be subject to dismissal in any event, because a seller may not bring a private action under the UTPCPL. *See* 73 Pa. Stat. § 201-9.2(a); *De Fazio v. Gregory*, 835 A.2d 935, 939 (Pa. Super. Ct. 2003).

otherwise be denied, and (3) the motion to dismiss filed by defendant Patty Clemons will

be granted, and Counts III and VI will be dismissed as to Clemons without prejudice.

An appropriate order accompanies this opinion.